Good morning. Good morning. I'm Dean Stewart on behalf of the appellant Kyle Korte. I'd like to start with the rather large and obvious fact that the government never raised the parole status of my client in the district court. Our position is that at this point they can't raise it, they're precluded from raising it, and this becomes simply a cell tower carpenter case. One of the things the government also pushed in addition to the parole status of the client was good faith, and I think that's an important argument on the issue. But what distinguishes the Korte case from the other circuits is the fact that the other circuits had binding precedent in place, whereas this court had not ruled, had given us a hint, but hadn't actually ruled on the cell tower issue as to whether or not a warrant. Dean Stewart Counsel, if I can just interject. You opened by saying the government had not raised the parole status in the district court. I just want to make sure I understand the basis for that. I'm looking at the declaration of Mr. Gittins, which looks like it's at ER 28, and Mr. Gittins testifies, or it might have been Detective Gittins testifies, Special Agent Gicking further told me that your client was still on parole for this violation and was subject to parole terms. Kyle Korte Yes, that's correct. Dean Stewart So how was it not raised in the district court? Kyle Korte It was never raised by the government. They never brought to Judge Staton the fact that my client was on parole. They never argued any of this. Dean Stewart But it's in the declaration that was filed with the district court, so it was brought to the district court's attention. Kyle Korte It was, but again, it was not part of their argument, and I would submit to the court that Judge Staton never ruled on it. How can this court review what happened in the district court if she didn't rule on that? She ruled on good faith. Debra Blanco Well, but if someone's on parole, that's the elephant in the room. How do you change that? Dean Stewart Well, you don't change that.  that would change it. Kyle Korte Well, but if someone's on parole, that's the change it. But he is on parole. Dean Stewart Certainly. But in all cases, if the other side doesn't bring up the matter in the district court, the court can't just sua sponte come across and argue or decide on that particular issue. That's what I'm saying, is unlike the GPS issue, which they argued it, Judge Staton ruled and the normal progression with the cell tower, no one ever discussed it in the district court. Just because it's in a small part of the record doesn't mean that this was part of something that Judge Staton considered and ruled upon. She did not. Kyle Korte And just to be clear, you're talking about just as a cell tower that they didn't raise the parole issue? Dean Stewart Correct. Kyle Korte Okay. I'm sorry. I misunderstood. But you're not contesting that they raised it as for the search of the trunk? Dean Stewart I wish I could. But I can't. Kyle Korte Okay. Okay. Thank you. That's the point for clarification. Thank you. Dean Stewart So again, focusing back on the cell tower and good faith, again, this court had not ruled. We had a hint in the Reyes case, which was unpublished. But maybe the difference here... Kyle Korte All right. But it was at the time that it happened, at the time that they used that information, it was legal. So why wouldn't that have... If it was legal at the... Because the Supreme Court case didn't come till after. So the good faith is what did the officers think at the time? And if it was legal at the time, how can we, you know, how can we later punish them for that? Dean Stewart Right. Well, for one, it wasn't... Kyle Korte I mean, because it was legal for people that weren't on parole at the time. Dean Stewart For one thing, it wasn't an officer. It was an assistant U.S. attorney. And I would suggest that they have to be held to a higher standard. This assistant U.S. attorney... Kyle Korte Well, but following Supreme Court precedent at the time isn't... The Supreme Court precedent you're saying is essentially they would have had to have anticipated that at a point in the future, you would have needed a search warrant to get that information. Dean Stewart No, they would simply have had to recognize that there was no binding precedent. And under those circumstances, they should have gone for a search warrant, not risk simply doing an application. Now Carpenter, we are arguing, is retroactive. And we should get the full benefit of it. The issue, although not the Carpenter name, but the issue was litigated in the district court. And I forgot. I'm going to try and save two minutes at the end. The Carpenter name didn't actually come up until my opening brief, when I indicated that it was pending. And then, of course, it was decided before my reply was filed. But this was the issue generally, and the cell tower was, in fact, fully litigated. Judge Staten found there was good faith. And that's it. Her entire... Judge Ginsburg Counsel, let me just ask this question. If we were to agree with you that the warrantless search of Cortez Truck was unlawful, why couldn't we nevertheless affirm on the basis of a warrant exception? Dean Stewart Because here, Your Honor, we had set out in our brief that we think it goes beyond that. That it's actually a harassing situation of a parolee. And therefore, because of the three factors that we set out in our brief, that it shouldn't be a legal search at that point. The car trunk, of course, is a different situation than what we have in the cell tower. The cell tower is much more squarely, and I would suggest clearly, the government's acquisition of the cell information was illegal, because they didn't have the search warrant as renowned from Carpenter. Carpenter didn't deal with whether a parolee would have the... So, I mean, assuming if you want to talk about nightmares for you, we could actually say the good faith applies, but then we could also say that he's a parolee with very minimal rights, and so that Carpenter doesn't apply to parolees. We don't have to go there if we found the good faith exception. But if you want to talk the parade of horribles, we're free to do that too, right? That would be for me, Your Honor, and the court could do that as to the GPS and the trunk search. The court, I suggest, can't do that on the cell tower information, because again, they didn't argue it down in the district court. Judge Staten never ruled on it. So therefore, we're stuck where the government's stuck with their good faith argument, and this comes back to our situation where I suggest this case is different than almost any other case alleging good faith, is because it's not the cop on the beat. It's an assistant U.S. attorney who is imputed to know the law, and in fact, we know that he knew the law, because in his application of 11 pages, he spent 7 pages setting out other circuit authority for the fact that they don't need to get a search warrant. By implication, he knows that he needed a search warrant, or at least there was no binding precedent in this circuit at the time. He had some hints, again, from Reyes, the unpublished opinion, it's just like a quick one-liner, but he also had the two district court opinions, Judge Koh and Judge Alston from San Francisco both saying, one in a published opinion, the other one not, that they believed that a search warrant was necessary. Therefore, as a well-trained assistant U.S. attorney, he should have known that he needed to go for a search warrant at that point. He took a gamble. He took a flyer and just went with the application rather than going with a search warrant, and I would suggest at this point, government needs to pay the price for that. What about the exception of a search incident to arrest? And that gets us back to the car trunk, Your Honor, and here, remember, the facts are that it was a locked car trunk, and that the defendant is sitting over in a police car. So at this point, it's not a search incident to an arrest, because he couldn't have reached to that area. It wasn't the glove box. It wasn't his back seat, something like that. So a search incident to arrest, I don't believe, saves the government's position. I'm at two minutes, and with the court's permission, I'll see you now. You want to reserve that? Okay. Thank you. Thank you. Good morning, Your Honor. Good morning. May it please the Court, my name is Julia Reese, and I represent the United States. I want to keep your voice up a little. I want to start with this notion that there must be binding precedent on point in order for the government to rely on and invoke the good faith exception under Davis. And that is a principle that this Court has explicitly repudiated and lusted when this Court found that the good faith exception extended to searches of cell phones post Riley. This Court said that what matters is the rationale of the precedent, not factual equivalence. And even though there wasn't a factually equivalent case from this circuit holding that the 2703D process and procedures were constitutional, there was binding precedent from the Supreme Court holding that searches of information obtained by or held by third parties did not run afoul of an individual's Fourth Amendment rights. Well, I guess that the Supreme Court in Carpenter declined to extend the third-party doctrine of Smith v. Maryland, which was a 1979 case in the United States v. Miller, a 1976 case, to the unique nature of CSLI records. So why does the third-party doctrine apply to this case? Your Honor, we're not suggesting that the third-party doctrine applies to this case, just that pre-Carpenter it was reasonable for the United States, for the government and for the officers acting on the information that they had, to believe that the third-party doctrine would extend to the 2703D procedures and to CSLI records maintained by third parties. And in fact, that position was upheld by every single court of appeals that had considered the question before certiorari was granted in Carpenter. So there were over a dozen jurists. Well, the California Supreme Court in Peeble v. Smith expressed no opinion as to the legality of searching a parolee's trunk. How does that affect this case? Your Honor, in Schmitz, the issue was whether and to what extent the officers could search a third party's car based on the presence of a parolee in that car. And although the California Supreme Court in that case didn't express an opinion as to whether in that particular case a search of the car trunk would be permissible, it did indicate that officers could search any compartment of the car where officers reasonably expected the parolee could have stowed items. And again, this is a third party's car. Here we're dealing with Mr. Corte's car, where he was the driver and the sole occupant of the vehicle. But as long as officers have reason to believe or reasonably expect that the parolee could have placed materials in the compartment that they're searching, then they can search that compartment. And here, the officers actually watched Mr. Corte case a bank and then place items in the trunk of his car. Under those circumstances, Your Honor, the government submits that there actually was probable cause to search the trunk of Mr. Corte's automobile. Because they, again, had probable cause to arrest him. A magistrate judge had found probable cause to believe that he had committed the strings of bank robberies that were under investigation. And then they, again, for over half an hour, watched Mr. Corte case a bank in a tire that was similar to the suspect for the armed robberies for which they had a warrant to arrest Mr. Corte. And then watched him walk back to the car and place items in the trunk. Under those circumstances, even under Schmitz, which again is a results or addresses a search of a third party's vehicle based on the presence of a parolee, even under Schmitz, the California Supreme Court, the government submits, would uphold a search of the trunk in this particular case. Let me ask you about the GPS. Even though Corte has minimal privacy interest because of his parolee status, why doesn't tracking the movements by placing a GPS tracker on his car constitute a Fourth Amendment search under United States v. Jones? I mean, obviously we know if he weren't a parolee, you got, you can't, you got to get a search warrant to put the GPS on. So how far do we go with parolees? I mean, do they have? Yes, Your Honor, I have a question. The government doesn't contest that it is a search. The question is whether the search was reasonable. And in this particular case, given Mr. Corte's parolee status, and in particular the California Court of Appeals decision in Sikwik, which held that the California Suspicionless Parole Search Condition covers the placement of GPS trackers on a parolee's car. Under those circumstances, Mr. Corte's expectation of privacy in his movements, at least in the state's interest in monitoring parolees, was so heightened in this particular case that the interest, any interest that Mr. Corte may have had in his expectation of privacy was overcome. So your counsel for Mr. Corte said the words of harassment on Mr. Corte. What evidence is there in the record, or lack of evidence, what is the evidence in the record that could support harassment? None, Your Honor. In this particular case, in fact, there was individualized suspicion at that point, at the point in time that the officers placed the GPS tracker, to believe that Mr. Corte had, in fact, again, committed the string of bank robberies. And those facts included that there was a string of robberies with a similar modus operandi. There was a car registered at the address that Mr. Corte provided to his parole officer that was seen on surveillance camera around the scene of the October 27th Union Bank robbery. He was on parole at that time for a prior bank robbery, and although an individual's criminal history is standing alone, not sufficient to support individual, not sufficient to support probable cause, it certainly can factor into the question whether it's individualized suspicion to believe that an individual is engaged in ongoing criminal behavior. And also, an officer that was familiar with Mr. Corte's prior bank robbery that he had committed, viewed the surveillance video and the footage from the string of bank robberies that were under investigation, and concluded that the suspect, while masked, did have similar clothing and appeared to be Mr. Corte. Under those circumstances, Your Honor, the government submits that there was at least reasonable suspicion, if not probable cause, to believe that Mr. Corte was involved in the string, another string, of armed bank robberies. And given that level of individualized suspicion, it wouldn't be harassing to focus on Mr. Corte as a possible suspect of these ongoing bank robberies. So what he calls harassing, you say, is good police work? Am I summarizing it? Is that? Yes, Your Honor, and I would also point out that the Supreme Court and this Court have explicitly repudiated the idea that officers working on an investigation in which they are honing in on a suspect who happens to be a parolee are violating the principles of parole search conditions that would preclude them from being arbitrary, capricious, and harassing. In Stokes, this Court recognized that Knights explicitly rejected the subterfuge line of reasoning on which Mr. Corte's opening brief argument for harassment is based. And given that the subterfuge line of reasoning has been explicitly rejected, officers are allowed to focus on a parolee, particularly when they believe that that parolee is engaged in ongoing criminal behavior. And to that end, I would point out that Mr. Corte was actually, as a condition of his parole, of course, precluded from engaging in additional criminal conduct. And here, they had individualized suspicion or individualized reason to believe that Mr. Corte himself was engaging in ongoing criminal conduct. And ongoing criminal conduct that the state has a particular interest in investigating. Here again, this was a violent crime. He was suspected of being involved in a string of armed bank robberies at that point in time. As this Court recognized in Johnson, when it held that Riley doesn't require a warrant to search a parolee's cell phone, when a parolee has a violent history and the state is investigating a violent crime spree, the government's interest is heightened at an apex. And given the interest as an apex in those circumstances, the individual warrant requirements that would ordinarily apply to ordinary citizens simply don't apply to parolees like Mr. Corte. And the government submits that that extends to both the placement of the GPS tracker, the search of the car truck, and the acquisition of CSLI data. And I do want to address Mr. Corte's point in opening argument that the government didn't advance the parolee rationale with respect to the acquisition of CSLI data in the district court. And that's true. The government did not argue in the district court that Mr. Corte's status as a parolee itself would allow the government to obtain CSLI data pursuant to a 2703D order and without a warrant. But that information was before the district court. The government did advance the argument that Mr. Corte's parole status allowed the search of the trunk and the GPS search. All of these motions were heard at the same hearing, so the information was, again, before the district court. And this court has all of the information that it would need to rule on that basis. And this court can affirm for any reason supported by the record. And here, the record does support a conclusion that Mr. Corte's status as a parolee overcomes any legitimate expectation of privacy that he might have in his location data. And for the same reasons that this court held that the parolee status of the individual in Johnson overcame his legitimate expectation of privacy in his cell phone, which the government submits is a heightened privacy interest as compared to his location information. For the same reason that those privacy interests are overcome and the government does not need to obtain a warrant in order to search an individual's cell phone, the government does not need to obtain a warrant in order to search an individual's, in order to get CSLI information that is maintained by a third party. In other words, the parolee has no expectation of privacy, period. Not necessarily no expectation of privacy, Your Honor, but just a reduced, a significantly reduced expectation of privacy, particularly when they are on notice that they are subject to a suspicionless parole search condition like the suspicionless parole search condition at issue here. And Mr. Corte was, was explicitly on notice and he knew that he was subject to that condition. Thank you. All right. Thank you for your argument. Thank you, Your Honors. Very briefly, I wanted to address a point that counsel just addressed. During the district court hearing on the motions, there were two separate written motions. I wrote suppression motions as to each the cell tower and the GPS. In the written response from the government as to the cell tower, there were no references at all to parole. At the time Judge Staten ruled on the cell tower motion, it was one sentence. I find, I deny the motion because of good faith, and that was it. There's no way that the government can now bootstrap the parole argument back into this case as to the cell tower. Clearly they made that argument on the GPS, but not on the cell tower, and I'd ask the court to so find. If the court has no other questions. Well, I'm curious on, you used the word harassment, and then I said, when I listened to all of that, you know how it sounds like good police work. I mean, your guy's on parole for a series of robberies. They're investigating him for a series of robberies, and there's, you know, that it's like, you know, it looks like they would have been not doing their jobs if they hadn't looked into your client, and so how's that harassing him? I need to clarify that that is as to the GPS, and perhaps the trunk, it is not as to the cell tower, and I think that's just a huge distinction. You're just arguing the standard. The standard is arbitrary capricious or harassing. That's where you're using the word harassment. Yes. Yes. Yes, I am, and I set out three reasons why we think that's true in the brief. No sense in going over them now. This matter will stand submitted. I want to thank both of you for your argument. You're clearly familiar with the law and the facts in the cases, and it was very helpful to the court.
judges: D.W. Nelson, Callahan, Owens